PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, *etc.*, | ) ) ) | CASE NO. 1:10CV01823 |
| Petitioner, | ) ) | |
| v. | ) ) | JUDGE BENITA Y. PEARSON |
| CSX TRANSPORTATION, INC., | ) ) ) | |
| Respondent. | ) ) | **MEMORANDUM OF OPINION AND ORDER** |

Before the Court are competing motions for summary judgment (ECF Nos. 11-1, 14-1) brought by Petitioner Brotherhood of Locomotive Engineers and Trainmen ("BLET") and Respondent CSX Transportation ("CSXT" or "the Carrier") based upon Federal Rule of Civil Procedure 56(c). BLET initiated the instant action against CSXT seeking enforcement of arbitral Award No. 12 of Public Law Board No. 7384 ("PLB 7384") pursuant to Section 3, First (p) and Section 3, Second, of the Railway Labor Act (45 U.S.C. § 153, First (p) and 153, Second). ECF No. 11-1. CSXT filed a counterclaim asking the Court to vacate arbitral Award No. 12 on the grounds that it exceeded PLB 7384's jurisdiction as specified in 45 U.S.C. § 153, First (q) of the RLA. ECF No. 14-1.

Upon consideration of the parties' motions for summary judgment, the Court grants BLET's motion for summary judgment (ECF No. 11-1) and denies CSXT's motion for summary judgment (ECF No. 14-1) and finds that PLB 7384 was within its jurisdiction in issuing Award

No. 12. Accordingly, final judgment upholding Award No. 12 is entered in favor of BLET and against CSXT pursuant to 45 U.S.C. § 153, First (p).

## I.     The Railway Labor Act's Statutory Framework

The Railway Labor Act ("RLA") was created to "'avoid any interruption to commerce or to the operation of any [railroad] engaged therein'" caused by labor-management disputes. *Int'l Bhd. of Teamsters, AFL-CIO v. United Parcel Serv.*, 447 F.3d 491, 495-96 (6th Cir. 2006) (citing 45 U.S.C. § 151a(1) and H.R. Rep. No. 328 at 1 (1926) (noting that the Act would ensure "continuity and efficiency of interstate transportation service, and . . . protect the public from the injuries and losses consequent upon any impairment or interruption of interstate commerce through failures of managers and employees to settle peaceably their controversies")).

The RLA created the National Railroad Adjustment Board ("NRAB") as a permanent arbitration board. 45 U.S.C. § 153, First. The RLA allows a carrier and union, by agreement, to establish special boards of adjustment as an alternative to the NRAB. 45 U.S.C. § 153, Second (second unnumbered paragraph). These special boards of adjustment are commonly referred to as "public law boards" or "PLBs" to distinguish them from other boards established under Section 3. See, e.g., Int'l Bhd. of Elec. Workers v. Washington Terminal Co, 473 F.2d 1156, 1165 n.24 (D.C. Cir. 1972). A PLB consists of three members, one appointed by the carrier, one appointed by the union, and an arbitrator who serves as the neutral member and chairperson of the PLB. 45 U.S.C. § 153, Second (second unnumbered paragraph).

Section 3 of the RLA grants PLBs exclusive jurisdiction to resolve disputes over the "interpretation or application of [collective bargaining] agreements" affecting the railroad

industry. 45 U.S.C. § 151 *et seq.* The Act divides labor disputes into two categories, only one of which is relevant here.[1] "Minor" disputes:

> grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation[,] . . . develop from the interpretation and/or application of the contracts between the labor unions and carriers . . . [and] pertain[] only to disputes invoking contract-based rights.

*Hawaiian Airlines v. Norris*, 512 U.S. 246, 252-54 (1994) (internal citations and quotations omitted). Minor disputes are handled in the following manner:

> To address 'minor disputes,' Congress amended the Act in 1934 to give the National Railroad Adjustment Board power to settle such disputes definitely . . . . After the 1934 amendments, if either party filed a 'minor' dispute with the Board, the Board had 'exclusive primary jurisdiction' to issue a decision that was binding as to both parties.

*United Parcel Serv.*, 447 F.3d at 498 (internal citations omitted). Thus, a minor dispute arises out of the enforcement of an existing CBA. Under the RLA, minor disputes must be resolved through binding arbitration before a PLB established by the union and the employer.

## II.  Factual and Procedural Background [2]

This case requires the Court to review a PLB's award that was issued pursuant to the RLA, 45 U.S.C. § 151 *et seq.* The facts of this case are not in dispute. The parties' statements of fact are summarized as follows:

---

[1] The RLA divides disputes into two categories, major and minor disputes. Major disputes concern the formation of CBAs. *See Conrail v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989) (citing *Elgin, Joliet & East, Ry. Co. V. Burley*, 325 U.S. 711, 723 (1945)). The RLA requires that major disputes be resolved through a "lengthy process of bargaining and mediation." *Id.* at 302.

[2] The parties have filed with the Court a Joint Appendix that contains the stipulated record of proceedings before PLB 7384 (JA 1-137) as well as the PLB's Award No. 12 (JA 138) and CSXT's dissent (JA 139-141). All references herein to "JA___" are to that Joint Appendix.

CSXT operates the largest railroad system in the Eastern United States (ECF No. 14-1 at 7) and is a "carrier" within the meaning of Section 1, First of the RLA (45 U.S.C. § 151, First). ECF No. 11-1 at 2. CSXT's labor relations are governed by the RLA, under which employees are grouped into bargaining units known as "crafts or classes." 45 U.S.C. § 152, Fourth. There are two crafts of employees that are involved in the actual operation of trains: engineers and trainmen. ECF No. 14-1 at 7. CSXT's engineers are represented for collective bargaining purposes by BLET. ECF No. 14-1 at 7.

BLET is a national labor organization and the duly authorized bargaining representative under the RLA for persons in the employ of CSXT as locomotive engineers. ECF No. 11-1 at 2. At the times relevant to this appeal, B.T. Pearce ("Pearce") works for CSXT as a locomotive engineer. BLET and CSXT are parties to a collective bargaining agreement ("CBA") that governs the rates of pay, rules, and working conditions of CSXT's Locomotive Engineers. ECF No. 11-1 at 2.

Article 30 of the Agreement provides in relevant part that "[a]n employee shall not be discharged, suspended, or otherwise disciplined without just cause and without a fair and impartial hearing . . . . ECF No. 11-1. Moreover, Section 3, First (i) of the Railway Labor Act provides that:

> disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

45 U.S.C. § 153, First (i). ECF No. 11-1.

In the instant case, CSXT has issued an attendance policy for train crew employees to help assure that employees are not excessively absent. ECF No. 14-1 at 8. Under the attendance policy in place during the relevant time period, an employee was expected to be available a minimum number of week and weekend days. ECF No. 14-1 at 8.

In 2007, CSXT determined that Pearce had failed to comply with its attendance policy. ECF No. 14-1 at 8. Pearce was subsequently charged with excessive absenteeism, and after a formal investigation conducted pursuant to the CBA, CSXT terminated Pearce's employment. ECF No. 14-1 at 9.

Pearce appealed his termination to a PLB as provided under Section 3 of the RLA. ECF No. 14-1 at 9. The RLA requires that minor disputes be submitted to arbitration under Section 3 of the RLA, 45 U.S.C. § 153. Permitted to select his representative in that arbitration pursuant to the CBA, Pearce selected another union, the United Transportation Union ("UTU") to appeal his discharge. ECF No. 14-1 at 10.

CSXT and UTU agreed that Pearce's appeal of his discharge for excessive absenteeism would be heard by PLB No. 6902 ("PLB 6902"). ECF No. 14-1 at 10. PLB 6902 was comprised of a Carrier Member appointed by CSXT, an Organization Member appointed by UTU, and Francis J. Domzalski[3], a Neutral Member selected jointly by CSXT and UTU, and appointed by the National Mediation Board. ECF No. 14-1 at 10.

On April 30, 2008, PLB 6902 issued Award No. 79. PLB 6902 decided that "CSXT's discipline of Pearce was warranted," as "[f]acts brought forth at the investigation conclusively

---

[3] Domzalski is a professional arbitrator and serves as Chairman of PLB 6902. ECF No. 14-1 at 10.

showed the claimant did not comply with the Carrier's [] [attendance] policy." ECF No. 14-1 at 11. However, PLB 6902 also found that "considering all factors involved in this [] case," the discipline assessed by CSXT should be reduced to a suspension without back pay. ECF No. 14-1 at 11. As such, PLB 6902 reinstated Pearce stating:

> The claimant is to understand that the purpose of this Award is to give him one "last chance" to be a safe and reliable employee, and the lengthy suspension without pay will emphasize the gravity of this situation. Also, he should understand that any future infractions of the rules on his part will result in his permanent termination from service.

ECF No. 14-1 at 11.

Less than a year later, Pearce again violated CSXT's attendance policy and CSXT charged him with excessive absenteeism. After another formal investigation conducted pursuant to the CBA, Pearce was found guilty and subsequently discharged. ECF No. 14-1 at 12.

Pearce, again, appealed his discharge to arbitration. This time, Pearce selected BLET to represent him, and his appeal was submitted to a PLB No. 7384 ("PLB 7384"), a PLB established by CSXT and BLET. ECF No. 14-1 at 12. At all times relevant to the case at bar, PLB 7384 was comprised of a Carrier Member appointed by CSXT, an Organization Member appointed by BLET, and David N. Ray[4], a Neutral Member selected jointly by CSXT and BLET, and appointed by the National Mediation Board. ECF No. 14-1 at 12.

In its arbitration submission, CSXT contended that the evidence developed at the hearing demonstrated that Pearce violated the attendance policy. BLET argued that the policy was

---

[4] Ray is a professional arbitrator and serves as Chairman of PLB 7384. ECF No. 14-1 at 12.

confusing and the fact that Pearce was a single parent should be taken into consideration as a mitigating factor. ECF No. 14-1 at 10. In addition, BLET asserted that "common sense" and fairness required the last chance instruction in PLB 6902's Award No. 79 not be applied. BLET addressed its contention in the following way:

> In closing, the Organization would like to raise a point of relevance involving Award No. 79 of PLB 6902 where Claimant was disciplined and rendered, according to the Neutral, an opportunity to return to work on a "last chance" basis in 2007. This is not an uncommon practice in the industry today, but having dealt with this matter countless times before I would respectfully ask the Board a unique question. If an employee is issued a "last chance" reinstatement today and has no further incidents for say ten years, would this be upheld and the employee terminated over one minor infraction involving availability? There are rules and then there is what used to be common sense - and it appears no common ground was considered here.
>
> ECF No. 14-1 at 12.

Following the hearing and after considering the parties' written submissions and Pearce's testimony, PLB 7384 issued its decision on April 23, 2010, known as Award No. 12. In Award No. 12, PLB 7384 held that CSXT's dismissal of Pearce was improper and sustained the part of Pearce's claim that sought full reinstatement as a locomotive engineer. ECF No. 14-1 at 13. CSXT's member on PLB 7384 dissented from Award No. 12 because of its failure to comply with PLB 6902's last chance condition provided in PLB 6902's Award No. 79.

As a result, CSXT has refused to reinstate Pearce as a locomotive engineer as directed by PLB 7384. BLET timely filed this action against CSXT seeking to enforce Award No. 12. CSXT responded by filing a Counterclaim seeking to vacate the Award No. 12. ECF No. 4.

### III. Standard of Review

Federal Rule of Civil Procedure 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 535 (1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249.

## IV. Judicial Review of Decisions Made Pursuant to the RLA

The Court may overturn Board determinations under the RLA only when: (1) the PLB failed to comply with the requirements of the RLA; (2) the PLB exceeded its jurisdiction; or (3) there was fraud or corruption by the PLB.  45 U.S.C. § 153 First (q).  The Supreme Court has strictly limited the scope of review to these three items.  See *Union P. R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S. Ct. 399, 58 L. Ed. 2d 354 (1978).  Thus, the decisions of RLA-created boards are subject to a standard of review that has been characterized as "among the narrowest known to the law."  *Int'l Bhd. of Teamsters v. United Parcel Serv. Co.*, 447 F.3d 491, 498 (6th Cir. 2006) (quoting *Atchison, T. & S. F. R. Co. v. Buell*, 480 U.S. 557, 563, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987)).

The Sixth Circuit has indicated that "this standard of review is narrower even than the highly deferential 'abuse of discretion' standard."  *Jones v. Seaboard Sys. R.R.*, 783 F.2d 639, 642 (6th Cir. 1986).  The Supreme Court explained the rationale behind this restrictive standard as follows:

> The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations.  These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government: The Labor Management Relations Act of 1947, … 29 U. S. C. § 173(d), provides that '[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.' … Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed.

2d 286 (U.S. 1987).

As a result, "an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." Id. In other words, if: (1) the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority; (2) the award "draw[s] its essence from the contract," and (3) the award does not "reflect the [PLB's] own notions of industrial justice," a court cannot overturn the award even if the court is convinced that the arbitrator committed a "serious error." Id. Consequently, in determining whether the PLB exceeded its authority, the Court must "broadly construe the [A]greement and resolve all doubts in favor of the [PLB's] authority." Zeviar v. Local No. 2747, Airline, Aerospace & Allied Employees, etc., 733 F.2d 556, 559 (8th Cir. 1984).

The Court may not vacate the award simply because it disagrees with the arbitrator's interpretation of the contract. Id. This is so because the parties "authorized the arbitrator to give meaning to the language of the agreement." Id. Following that logic, courts also lack authority to disagree with an arbitrator's decision regarding remedies for contract violations. Id. The Supreme Court commented that to permit the Courts to do otherwise would result in interference with the "speedy resolution of grievances by private mechanisms." Id.

In the instant matter, BLET is seeking enforcement of arbitral Award No. 12 on the grounds that the PLB 7384's decision was within the confines of its jurisdiction and must therefore must upheld. ECF No. 11-1. CSXT responds to BLET's petition by filing a counterclaim asking the Court to vacate Award No. 12 on the grounds the Award exceeded PLB 7384's jurisdiction pursuant to 45 U.S.C. § 153, First (q) of the RLA. ECF No. 14-1. Thus, the resolution of the parties' motions for summary judgment hinges upon whether PLB 7384

exceeded its jurisdiction in issuing arbitral Award No. 12.  The Court discusses the parties' competing positions and relevant case law below.

### V.     CSXT's Motion for Summary Judgment

CSXT argues that the Court should grant its motion for summary judgment and set aside PLB 7384's Award No. 12 as in excess of its jurisdiction.  CSXT's position that PLB 7384 exceeded its jurisdiction is supported by two arguments – both of which emanate from the opinion expressed in PLB 6902's Award No. 12 indicating that Pearce's termination would be upheld if he again violated CSXT's attendance policy.

First, CSXT contends that PLB 7384 acted outside its jurisdiction because it failed to arguably construe, *i.e.* explain, why it disregarded the last chance condition contained in PLB 6902's Award No. 79.  CSXT contends that its deference to the prior arbitral award is mandated by both Supreme Court and Sixth Circuit precedent.  See *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987); *Michigan Family Res., Inc. v. Serv. Employees Int'l Union Local, 517M*, 475 F.3d 746, 753 (6th Cir. 2007).

CSXT reasons that in *Misco*, the Supreme Court held that an arbitrator acts outside his or her jurisdiction when the award fails to "draw its essence from the collective bargaining agreement." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987) (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).  ECF No. 14-1 at 15.  And in *Michigan Family Res. Inc. v. Serv. Employees Int'l Union Local, 517M*, 475 F.3d 746, 753 (6th Cir. 2007), the Sixth Circuit explained that an arbitration award draws its essence from the collective bargaining agreement as long as the arbitrator was "arguably construing and applying the contract."

-11-

Additionally, CSXT bolsters its argument by relying upon a Fifth Circuit case which arguably construed and applied a last chance agreement between a carrier-employer and employee.  In *Continental Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391 F.3d 613 (5th Cir. 2004), the carrier terminated an employee who failed a random alcohol test.  The employee filed a grievance, and rather than undergo arbitration, the carrier and union negotiated to restore the employee to work under a last chance agreement[5].  *Id.* at 615.  The employee subsequently returned to work, but thereafter failed another alcohol test.  He was again terminated by the carrier pursuant to the last chance agreement.  The employee pursued arbitration and was reinstated.  *Id.* at 616.  The Fifth Circuit held that by reinstating the employee contrary to the terms of the last chance agreement, the award "failed to arguably construe" that agreement as required under the RLA.  *Id.* at 620.

Even though the cases relied upon by CSXT above are factually distinguishable from the instant matter, as both *Misco* and *Services Employees Int'l Union Local, 517M* involved collective bargaining agreements, and *Continental* imposed the "arguably construe" requirement to a last chance agreement, CSXT nevertheless argues that the cases are applicable to PLB 7384's Award No. 12.  Specifically, CSXT contends that because the terms of Award No. 79 indicated a "last chance condition," it is analogous to the last chance agreement in *Continental*.  Thus, importing the holding of *Continental* to the case at bar, CSXT contends that PLB 7384 was required to arguably construe Award No. 12.  And its failure to do so, necessitates vacating the Award.  ECF No. 14-1 at 19.

---

[5] In *Continental*, the employee agreed to the last chance agreement.  The reward before this Court does not reflect that Pearce entered any such agreement.  Rather, Pearce's reinstatement contained a condition that he would be terminated.

Additionally, CSXT argues that PLB 7384's Award No. 12 exceeded its jurisdiction because the PLB's ruling reflects an individual's sense of industrial justice not supported by the law.[6] CSXT states that "by utterly failing to address the central issue raised by both parties in the arbitration, application of the last chance condition, [the PLB] effectively applied its own notion of industrial justice." ECF No. 14-1 at 22. Noting that PLB 7384's Award No. 12 is "devoid of any mention of the plain language of Award [No.] 79's last chance condition[,]" CSXT claims PLB 7384 exceeded its jurisdiction as a result of the arbitrator dispensing his own brand of industrial fairness that makes Award No. 12 unenforceable pursuant to the RLA and Sixth Circuit precedent. ECF No. 14-1 at 22.

### VI. BLET's Motion for Summary Judgment

BLET asserts that it is entitled to summary judgment as a matter of law and to enforcement of Award No. 12 of PLB 7384 pursuant to the RLA because Award No. 12 confines itself to matters within PLB 7384's jurisdiction.

BLET supports its contention by relying upon the Sixth Circuit's decision in *Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257 (6th Cir. 1984). In *Jones*, the Sixth Circuit held that a PLB's jurisdiction is "conferred thereupon by the agreement between the carrier and the union." *Id.* at 264. As such, BLET claims the Court must find that PLB 7384's Award No. 12 was within its jurisdiction because the PLB Agreement entered into with CSXT provided that PLB 7384 fully complied with the provisions of the governing PLB Agreement. ECF No. 11-1 at 6.

---

[6] Because CSXT and BLET representatives disagreed, the third panel member's decision prevailed. Therefore, CSXT attributes PLB 7384's Award No. 12 to the arbitrator rather than the PLB's three member panel.

Armed with Supreme Court and Sixth Circuit precedent, BLET rejects CSXT's contention that PLB 7384's failure to arguably construe Award No. 12 necessitates vacating the Award. BLET emphasizes that in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 244 n. 4 (1962), the Supreme Court found that arbitrators were not required "to give their reasons for an award" or even to write opinions in support of their decisions. Similarly, BLET looked to *Michigan Family Res., Inc. v. Serv. Employees Int'l Union Local, 517M*, 475 F.3d 746, 755-56 (6th Cir.) (en banc), cert. denied, 551 U.S. 1132 (2007), in which the Sixth Circuit held that "arbitrators have no obligation to issue a written decision to justify their awards." ECF No. 11-1 at 9. In a parting salvo, BLET directs that Sixth Circuit precedent requires "courts [] to review outcomes, not opinions, while performing the exceedingly deferential task of considering whether to vacate an arbitration award." *Id.* at 755-56.

**VII.     Discussion**

A.     **Award No. 12 Draws its Essence from the CBA**

BLET correctly states the law. CSXT argues that Award No. 12 failed to "draw its essence" from the CBA because PLB 7384 did not "arguably construe" why it disregarded the last chance condition contained in PLB 6902's Award No. 79. Based upon this failing, CSXT moves the Court to vacate the Award No. 12 because PLB 7384 acted outside its jurisdiction pursuant to the RLA. ECF No. 11-1.

CSXT contends that because the terms of Award No. 79 indicated a "last chance condition," that it is analogous to the last change "agreement" in *Continental*. CSXT cites no case law wherein courts have equated last chance conditions to last chance agreements, yet CSXT argues those terms are similar because "arbitrators understand that the last chance

-14-

conditions contained in arbitration awards are just as binding on the employee as a last chance agreement." ECF No. 14-1 at 19.

Numerous courts, including the Supreme Court and Sixth Circuit, when deciding petitions for review or enforcement of RLA awards have reaffirmed that arbitrators acting under the RLA are not required to explain the rationale for their awards. As the courts have explained, when reviewing an RLA award, "arbitrators have no obligation to issue a written decision to justify their awards." *Michigan Family Res., Inc. v. Serv. Int'l Union Local, 517 M*, 475 F.3d 746, 755-56 (6th Cir.) (*En* banc), *cert. denied*, 551 U.S. 1132 (2007) (citing United Steelworkers of Am. v. Enter. Wheel and Car Corp., 363 U.S. 593, 598 (1960)); *see also* Rossi v. Trans World Airlines, Inc., 507 F.2d 404, 405 (9th Cir. 1974) (citing *Enter. Wheel*); *see also, e.g.,* Edelman v. Western Airlines, Inc., 892 F.2d 839, 848-49 (9th Cir. 1989) (rejecting assertion that two-sentence Board award did not meet RLA requirements because "'[i]t is well established that 'arbitrators have no obligation to the court to give their reasons for an award.'") (quoting *Enter. Wheel*); Airline Pilots Ass'n v. Northwest Airlines, Inc., 498 F. Supp. 613, 620-21 (D. Minn. 1980) (upholding RLA award even though arbitrator "did not expressly set forth his reasoning" because "it is the award and not the opinion that must be examined . . . 'Arbitrators have no obligation to the court to give their reasons for an award.'") (quoting *Enter. Wheel*); Monaghan v. Cent. Vermont Ry., 404 F. Supp. 683, 687-88 (D. Mass 1975) (rejecting Carrier's argument that RLA award exceeded Board's justification because the award made no specific reference to the collective bargaining agreement being interpreted) (citing *Enter. Wheel*). *Cf.* Michigan Family Res. Inc. v. Serv. Employees Int'l Union Local, 517M, 475 F.3d 746, 753 (6th Cir. 2007) (reasoning that an arbitration award draws its essence from the collective bargaining agreement

so long as the arbitrator was "arguably construing and applying the contract). ECF No. 14-1 at 15.

Generally, CSXT's argument fails to penetrate the armor created by this plethora of binding and persuasive case law. Specifically, CSXT fails to demonstrate that PLB 7384 acted outside its jurisdiction in issuing Award No. 12.

### B. PLB 7384 Did Not Dispense Its Own Brand of Industrial Justice

For the reasons stated above, the Court does not agree with CSXT's contention that PLB 7384's decision is tainted by any approach that makes Award No. 12 unenforceable. "'Only when the arbitrator strays from the interpretation and application,' . . . does he enter the forbidden world of 'effectively dispens[ing] his own brand of industrial justice,' making the arbitrator's decision 'unenforceable.'" *Michigan Family Res.*, 475 F.3d at 752 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation marks omitted)). The danger of imposing "industrial justice" may arise if "the arbitrator's decision on the merits was so untethered from the agreement that it casts doubt on whether he was engaged in interpretation." *Id.* at 754.

The Court is unpersuaded by CSXT's argument that Award No. 12 dispensed PLB 7384's own brand of industrial justice by ignoring arbitral precedent. Without any contractual provision to the contrary, the preclusive effect of an earlier arbitral award is to be determined by the arbitrator. *See Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Dana Corp.*, 278 F.3d 548, 557 (6th Cir. 2002). Thus, the Court rejects CSXT's final argument for vacating Award No. 12.

## VIII. Conclusion

Having found no basis to vacate Award No. 12 of PLB 7384, the Court grants BLET's motion for summary judgment. CSXT's motion for summary judgment is DENIED. BLET's motion for summary judgment is GRANTED.

Accordingly, because Award No. 12 was within PLB 7384's jurisdiction, this Court must order CSXT to comply immediately with Award No. 12, reinstate Mr. Pearce to his employment as a locomotive engineer, and pay him for all lost wages and benefits since May 23, 2010, the date by which the PLB required CSXT to comply with the Award. In addition, CSXT must compensate BLET for its attorney's fees and costs incurred in obtaining enforcement of the Award, as provided in Section 3, First (p) of the RLA, 45 U.S.C. § 153, First (p).

    IT IS SO ORDERED.

September 30, 2011            /s/ Benita Y. Pearson
Date                                  Benita Y. Pearson
                                            United States District Judge